**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **WESLEY LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL NO. 3:08CV82** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Wesley Lewis, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability (DIB) payments. The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 11) be GRANTED; that Defendant's motion for

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

summary judgment (docket entry no. 14) be DENIED; and that the final decision of the Commissioner be REVERSED AND REMANDED for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on September 21, 2004, claiming disability due to head trauma, double vision, numbness on the right side and severe headaches, with an alleged onset date of September 10, 2004. (R. at 89-91, 101-02.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 69-71; 75-77.) Plaintiff requested a hearing and on January 3, 2007, accompanied by counsel, he appeared before the ALJ. (R. at 300-19.) Due to scheduling issues, the ALJ had to adjourn the hearing early, to be continued to a later date. (R. at 318-19.) On April 19, 2007 the claimant again appeared before the ALJ; however, he was not accompanied by counsel at that juncture. (R. at 320-34.) Plaintiff informed the ALJ that he had been notified that very morning that his attorney had withdrawn from the case. (R. at 324.) The ALJ explained to the Plaintiff that he had the right to the assistance of counsel, and he therefore continued the proceedings in order to allow Plaintiff time to secure substitute representation. (R. at 324-34.) On June 13, 2007, a final hearing was held, but Plaintiff again appeared before the ALJ without representation. (R. at 335-61.) Claimant requested a second continuance to obtain counsel; however, the ALJ found that Claimant had been afforded enough opportunity to secure counsel, and instead gave the Claimant the option of proceeding without counsel or withdrawing his request for benefits in order to be able to re-file

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

once he was able to secure representation. (R. at 345-46.) Claimant chose to proceed at the hearing without counsel. (R. at 346.)

On June 27, 2007, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, given the Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy which he was capable of performing. (R. at 22.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 5-7.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d

3

171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 19.) At steps two and three, the ALJ found that Plaintiff had the severe impairment of right sided weakness that limits Plaintiff's handling, fingering and feeling with his right dominant hand, 20/30 visual acuity in both eyes, and diplopia in his right eye, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 19.) The ALJ next determined that Plaintiff had the RFC "to perform a limited range of light work that involves four to six hours of standing, two to four hours of walking, and six hours of sitting." (R. at 19.) More specifically,

6

the ALJ found that the Plaintiff has no limitations using his left non-dominant hand and that he can lift and carry 20 pounds of weight with either upper extremity; however, he is limited to occasional handling, fingering and feeling with his right dominant hand. (R. at 19.) Additionally, the ALJ found that Plaintiff had "a minimal defect in his field of vision and 20/30 visual acuity in both eyes," but he also concluded that such impairment did not result in a significant visual limitation. (R. at 19-20.)

The ALJ then determined at step four of the analysis that Plaintiff was unable to perform any of his past relevant work because of the medium to heavy exertional requirements of the positions. (R. at 22.) At step five, the burden then shifted to the Commissioner to show that, considering claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Taking these factors into consideration, the ALJ explained that Plaintiff had the RFC to "perform a full range of light work," but that "his ability to perform all or substantially all of this level of work has been compromised by restrictions on more than occasional use of his right dominant hand to handle, finger and feel." (R. at 23.) Given these conclusions, the ALJ found that Plaintiff could perform unskilled light occupations, such as a sales attendant/greeter or a stock marker. (R. at 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 23.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. Summ. J. at 1.) In support of his position, Plaintiff argues that: (1) he was not afforded a full and

fair hearing because the ALJ did not allow him additional time to secure counsel and did not develop the record on Plaintiff's behalf when he proceeded pro se; (2) the ALJ erred in not resolving conflicts between the second VE's testimony and the information provided by the Dictionary of Occupational Titles; and (3) the ALJ erred by not addressing what weight was given to the opinions of Plaintiff's treating physician. (Pl.'s Mem. in Supp. Of Mot. Summ. J. "Pl.'s Mem." at 12-20.) Defendant argues that the Commissioner's final decision is supported by substantial evidence and should be affirmed. (Def.'s Mem. in Supp. Mot. Summ. J. "Def.'s Mem." at 9.) As the Court finds that Plaintiff's first argument is a sufficient basis to remand the case, it is not necessary to address Plaintiff's additional assertions.

**1.      The ALJ erred by not properly developing the record given the Plaintiff's pro se status.**

Plaintiff argues that he was denied a full and fair hearing because of the ALJ's refusal to allow him additional time to secure counsel. (Pl.'s Mem. at 12.) Additionally, Plaintiff asserts that the ALJ erred by not fully developing the Record once he became aware that Plaintiff was proceeding pro se. (Pl.'s Mem. at 16-17.) Stated another way, without being allowed counsel to assist in the presentation of testimony, and without the ALJ undertaking measures to fully develop the record, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. at 12-20.)

Claimants in social security cases are entitled to a full and fair hearing of their claims. See Sims v. Harris, 631 F.2d 26, 27 (4th Cir. 1981). If the Court finds that a full and fair hearing was not administered, the Court may remand the case back to the Social Security Commissioner for a more complete analysis. See id. At the same time, lack of representation by counsel "is not by itself an indication that a hearing was not full and fair;" however, "where the absence of

counsel created clear prejudice or unfairness to the claimant, a remand is proper." Id. at 28; see also Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981); Stahl v. Commissioner of Social Security Administration, No. 2:07cv19, 2008 WL 2565895, at *5 (N.D.W.Va June 26, 2008). One form of prejudice continuously recognized by the Fourth Circuit is an ALJ's failure to fully develop the record, especially where the claimant is proceeding pro se. See Walker, 642 F.2d at 714 (citing Sims v. Harris, 631 F.2d 26 (4th Cir. 1980); Marsh v. Harris, 632 F.2d 296 (4th Cir. 1980)). When a party proceeds at the administrative hearing pro se, the ALJ has a "duty to assume a more active role in helping claimants develop the record." Sims, 631 F.2d at 28 (citing Crider v. Harris, 624 F.2d 15 (4th Cir. 1980); Livingston v. Califano, 614 F.2d 15 (3d Cir. 1980)). As part of this duty, "the ALJ should 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts,' being 'especially diligent in ensuring favorable as well as unfavorable facts and circumstances are elicited.'" Marsh, 632 F.2d at 299 (citing Gold v. Secretary of Health, Educations and Welfare, 463 F.2d 38, 43 (2d Cir. 1972); Rosa v. Weinberger, 381 F. Supp. 377, 381 (E.D.N.Y. 1974)). Even in cases where the record presented to the Court contains substantial evidence to support the ALJ's determination, the Court may exercise its authority to remand the case for additional fact finding where the ALJ did not fully and conscientiously develop the record. See Walker, 642 F.2d at 714.

In this case, the ALJ failed to properly develop the record, particularly given the Plaintiff's "hesitant" pro se status. At the Plaintiff's third ALJ hearing, he appeared without counsel, explaining that he was unable to obtain the assistance because of the logistical issues associated with where he lived and his inability to secure documents from his former counsel. (R. at 338-40.) He asked the ALJ for more time to obtain counsel, stating: "I don't think that I'm capable of answering some of the questions that might be . . . placed before me, and I don't know

what." (R. at 342.) He also stated that he hadn't been accompanied by his sister, who had appeared at both of the previous hearings and who had offered supporting testimony, because he didn't think the hearing would proceed that day. (R. at 346.) The ALJ provided Plaintiff with the choice to either proceed with the hearing without counsel, as the hearing had already been postponed to allow Plaintiff to obtain new counsel, or to re-file his claim once he had retained representation. (R. at 340-42.) Plaintiff, obviously and understandably concerned about having to re-file his claim and initiate the disability claims process again, hesitantly decided to proceed. (R. at 12.) However, when Plaintiff opted to proceed without counsel, the ALJ had a heightened responsibility to develop the record, including raising all relevant facts and issues involved.

Based on a review of the hearing record, it appears that the ALJ failed to sufficiently question the Plaintiff about his symptoms, his pain or his opinions as to why he was disabled. The ALJ is responsible for determining a claimant's RFC based on all "relevant evidence in [claimant's] case record." 20 C.F.R. § § 416.945(a)(1), 416.946(c). The RFC analysis consists of a two step process where the ALJ is to: (1) determine whether there is an underlying medically determinable physical or mental ailment that could reasonably be expected to produce the claimant's symptoms; and then (2) the ALJ is to evaluate the intensity, persistence and limiting effects of claimant's symptoms to determine how these limitations would effect the claimant's ability to engage in work related activities. 20 C.F.R. § 404.1529; SSR 96-7p; Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996). In conducting this analysis, the ALJ failed to question the Plaintiff about the pain he experiences or his ability to function or cope with his symptoms. The ALJ spent most of the first and third hearings questioning the Plaintiff about his previous employment, while neglecting to inquire about what limitations he had due to his impairments. At one stage, the ALJ did ask Plaintiff about his visual problems, and Plaintiff

10

responded by attempting to explain his condition as a whole. (R. at 354-55.) But instead of pursuing what Plaintiff had said about his symptoms, the ALJ directed the examination back to Plaintiff's issues involving only his eyesight. (R. at 355.) The ALJ did not question Plaintiff about his other asserted impairments, and in fact, the ALJ started questioning the VE without ever entertaining any testimony as to Plaintiff's daily activities, physical abilities or medical limitations. (R. at 354-56.) Although some of that information was available through the medical documents and various submissions in the Plaintiff's record, many of those documents were more than a year old and they did not include information or relevant insight as to address Plaintiff's recent condition or stated subjective symptoms.

The failure to question Plaintiff on his asserted symptoms or pain prejudiced the Plaintiff in two ways. First, because of Plaintiff's pro se status, the ALJ had the duty to ask pertinent questions relating to Plaintiff's disability in order to ensure that his analysis was thorough and complete. Often, the pro se Plaintiff will be unaware of the standards used to make a disability determination, or what facts may clarify the case for the tribunal. When a claimant demonstrates that his knowledge or ability to present his own case is lacking, the ALJ must make an effort to question him on the relevant issues – particularly issues of pain or other subjective limitations – which could influence the ALJ's RFC analysis. Here, the Plaintiff forthrightly stated that he did not feel he was capable of participating in the hearing on his own, and he otherwise made it clear that he was hesitant to go forward without counsel. (R. at 342.) The sincerity of Plaintiff's concerns was demonstrated at the end of the third hearing when the ALJ asked Plaintiff whether he had anything he wanted to add to the record:

> Q. Okay, anything additional, Mr. Lewis, that you would think that I should know before considering your case?

A. Such as what? What are you - -

Q. Mostly - -

A. - - referring to?

Q - - we want to - - I've got your written record, and I can read that, and I can reread it. But if you think there's something, you know, you want to emphasize for me or something I might be missing, you know, in order to evaluate your circumstance, we'd want to hear from you about that.

A. I'm still not understanding. What are you asking me about? About my health or about my - -

Q. Yeah.

A. - - about work or what are you asking me?

Q. Well, what I do in these, all these disability type cases is I look at the individual as a person working or seeking work or unable to do that if, you know - - so I'm looking at any claimant, that means you, as to whether I believe the record shows you can work or if you're seeking work, what are the - - would be the problems you'd have. Or if I find that you're no - - unable to work, what would be the things that I would say that cause you to be unable to work? That's basically how I'm going to frame it. So is anything that I'm missing, or have we touched it?

A. Like I - - all I could say is that I just said I don't think I'm physically or mentally capable of performing work exercises. That's just my opinion from knowing how I was previous to now. I just don't feel like I could. I mean it's not good. I just don't know what it is that I could do that would satisfy an employer. I've considered that. I've - - like I said, it's been almost three years that I haven't come up with anything as to what could I do as far as work that I think I could perform that I could - - somebody would give me a job. It's just - - I don't know.

Q. All right, sir.

Not knowing what information may aid the ALJ's determination, and not having been guided by an attorney, or having been thoroughly quested by the ALJ, the Plaintiff was unable to present all pertinent evidence as to his current condition, his daily activities, and his beliefs, albeit subjective, as to why he was disabled. Had the ALJ asked such questions, the Record

12

would have been more complete, and such more thorough examination would have aided the Plaintiff in understanding what he may have contributed in response to support his case.

Plaintiff was also disadvantaged by the ALJ's failure to question him concerning his condition during the examination of the second VE at the third hearing. At the first hearing, where Plaintiff was represented by counsel, the ALJ posed the following hypothetical to the VE:

> Q. A person of limited education and age and education of Mr. Lewis. This individual is capable of performing at the light exertional level, not to, not to exclude sedentary. The job duties should not involve the need to handle or finger with the dominant upper extremity as a integral part of the job, in other words, the job duties, if it required hiring a person who had unfettered handling and fingering, the dominant upper extremity, this person would probably not be hired, and let me ask - -
>
> A. And what would be the, what would be the, would it be, would there be any function of that?
>
> Q. Well obviously, the hand, well, I shouldn't say obviously, the hand could be used as a helper hand.

(R. at 311.) In response to this hypothetical, the VE testified that he was unaware of jobs that could be performed with the listed constraints. (R. at 312.) Specifically, the VE stated that he didn't "know of jobs with that limited use of the dominant hand." (R. at 312.) Plaintiff's attorney also questioned the VE, but did not have time to present the testimony of Plaintiff or Plaintiff's sister (who had appeared as a witness), due to time constraints on the part of the ALJ. (R. at 318.) The hearing was continued until a later date, and the ALJ told Plaintiff that at the next hearing he would have an opportunity to testify. (R. at 318-19.)

However, at the third hearing, as previously noted, Plaintiff proceeded without counsel, and a different VE was present to testify. (R. at 337-38.) At the beginning of that hearing, the ALJ explained to Plaintiff that although testimony had been presented in earlier hearings, it was with a different vocational expert, and it would therefore be necessary to re-visit some of the

13

same issues with the new VE. (R. at 337.) As the ALJ proceeded, he questioned Plaintiff again concerning his previous employment and his work-related responsibilities; but, again, the ALJ only examined Plaintiff about his visual issues, and not his other alleged disabilities. (R. at 354-55.) Specifically, the ALJ never questioned Plaintiff about his ability to use his right dominant hand or upper extremities.

> The ALJ then questioned the VE, asking the following hypothetical:
>
> . . . what I'm looking at here is I've got near acuity in the better eye, and these, I believe, are uncorrected, 20/30. . . . So what 20/30 means is that what the affected person must do - - for what a person with normal vision can see at 30 feet away, he has to move up to 20 feet away. . . . Both eyes for far acuity, 20/30. And there's a minimal defect in the field of vision. So want to take that as being basically what it says, minimal and not a significant factor unless one were dealing in some type of a skilled type occupation where perfect field of vision, you know, periphery as well as directly ahead was important. Okay, but anyways I've got a person in his or her 50s. I've got 11th grade education, ***and this person with the dominant upper extremity can occasionally do the handling and fingering necessary for tasks. Lifting and carrying up to 20 pounds occasionally***. This person can sit for six hours of the eight-hour workday. And here's where the variable is . . . One would be can stand or walk for two to four hours, and the other variable would be walk for four to six.

(R. at 356-57) (emphasis added). In response, the VE testified that such a hypothetical individual work was, in fact, available as a sales attendant/greeter or as stock marker. (R. at 357.) The ALJ did mention other potential limitations such as the length of time Plaintiff could stand or sit, but he did not examine the VE as to the use of the Plaintiff's use of his dominant hand, nor did the ALJ mention the previous VE's testimony and opinion. Having not questioned Plaintiff about the limitation, and with no new medical evidence having been presented, there was a discrepancy that the ALJ failed to properly inquire about or develop on the record. Had the Plaintiff had counsel, the latter could have inquired into such a hypothetical and the ALJ's determination that Plaintiff's hand was no longer a "helper hand," but instead only occasionally functional. Had the ALJ further developed the record, or questioned the Plaintiff on his

14

disabilities, perhaps the rationale for the differing hypotheticals would be apparent. However, as the record stands, the discrepancy cannot be resolved. As such, the Plaintiff was prejudiced by the ALJ's failure to properly develop the Record in making his determinations. Accordingly, the Court recommends a finding that substantial evidence does not exist in the present Record to support the ALJ's conclusion that Plaintiff is not disabled under the Act.

Although there appears to be insufficient evidence to sustain the ALJ's decision to deny benefits, this Court is nevertheless unable to recommend the outright awarding of benefits based on the information presently in the Record. The law succinctly provides that when reviewing a case, a court may not make findings of fact or resolve conflicts apparent in the evidence. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, where the ALJ has not fully developed the Record, the Court cannot directly award benefits because all relevant evidence upon which a determination is made is not available. Therefore, it is this Court's recommendation that the final decision of the Commissioner be reversed and that the case be remanded for further proceedings consistent with this Report and Recommendation.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 11) be GRANTED; that Defendant's motion for summary judgment (docket entry no. 14) be DENIED; and, that the final decision of the Commissioner be REVERSED AND REMANDED for further proceedings consistent with this Report and Recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                            /s/
                                          DENNIS W. DOHNAL
                                          UNITED STATES MAGISTRATE JUDGE

Date: October 24, 2008
Richmond, Virginia